**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

TERENCE JONES, M.D., Ph.D.                                          PLAINTIFF

VS.                                4:06CV00542 WRW

MARK FORD; ANDERSON DAILEY, LLP.;
TENET HEALTHSYSTEM MEDICAL, INC.;
WENDELL VAN ES                                                    DEFENDANT

<u>ORDER</u>

Pending are Motions to Dismiss for Lack of Jurisdiction filed by Defendant Mark Ford

and Anderson Dailey, LLP[1]; and by Defendants Tenet HealthSystem Medical, Inc. and Wendell

Van Es.[2]  Plaintiff Terence Jones responded to both Motions.[3]  Also pending is a Motion to

Dismiss or Strike filed by Tenet HealthSystem Medical, Inc. and Wendell Van Es[4] and a Motion

to Dismiss the Amended and Substituted Complaint,[5] to which Plaintiff responded.[6]  Finally,

Plaintiff filed a  Motion for Leave to File a Second Amended and Substituted Complaint,[7] to

which Defendants Tenet HealthSystem Medical, Inc. and Wendell Van Es responded.[8]

---

[1]Doc.  No. 5.

[2]Doc.  No. 8.

[3]Doc. No. 12.

[4]Doc. No. 17.

[5]Doc. No. 19.

[6]Doc. No. 23.

[7]Doc. No. 21.

[8]Doc. No. 27.

**I.  Background**

This is a tort case alleging that Defendants, Wendell Van Es ("Van Es") and Tenet HealthSystem Medical, Inc.("Tenet"), filed a fraudulent lawsuit against Plaintiff Dr. Terence Jones ("Jones").  Defendant Mark Ford ("Ford") is a lawyer and a partner with Defendant Anderson Dailey, LLP ("Anderson"), who represented Tenet and Van Es in the allegedly fraudulent lawsuit.  Jones also sued six John Doe Defendants.

Jones is a citizen of Alabama; Tenet is a Delaware Corporation that is registered to do business in Arkansas; Van Es is a citizen of Arkansas; Ford practices law in Georgia, and Anderson is a Georgia law firm.  The subject of the allegedly fraudulent lawsuit was a Relocation Agreement ("Agreement") between Jones and St. Mary's Regional Medical Center ("Hospital") and the St. Mary's Medical Group ("Clinic").  The Hospital and the Clinic are located in Russellville, Arkansas.  Tenet owns the Hospital and Van Es is the Hospital's Chief Financial Officer.

The Agreement was part of a recruitment effort to entice Jones to practice general surgery in Russellville, Arkansas by guaranteeing Jones an income in exchange for his promise to remain in the area for three years.  Jones executed a separate Employment Contract with the Clinic.
The Agreement also made the Clinic jointly and severally liable with the Hospital if Jones left early and money was owed.  Jones alleges that he was never paid the guaranteed income by the Hospital because the money was paid to the Clinic.

Jones began working for the Hospital in 2001 but he left in 2002 -- before the expiration of the Agreement.  Van Es demanded that Jones reimburse the Hospital the sum of $29, 500.00. According to Jones's Complaint, the Hospital made no money demand to the Clinic.

The subject lawsuit was filed against Jones in Georgia.  Jones alleges that the lawsuit was fraudulent because it was filed by a non-existent entity -- St. Mary's Regional Medical Center -- for the purpose of concealing the actual Plaintiff -- Tenet.  Ford prosecuted the suit in Georgia, under the laws of Georgia.  Jones alleges that Ford filed a Complaint and Amended Complaint that contained allegations that he knew were false.  After a year of discovery and before the deposition of Van Es, Ford dismissed the lawsuit.  Jones alleges that the Georgia lawsuit was designed to cause him to pay sums that he did not owe, and to conceal a scheme to defraud the federal government.

Jones maintains that Arkansas is the proper venue for his malicious prosecution, fraud, and outrage case because all the underlying events took place in Arkansas, and all the witnesses are from Arkansas.

Ford and Anderson maintain that there is no personal jurisdiction because there are no significant contacts with Arkansas.  Ford is a resident of Georgia and Anderson is a limited liability partnership, organized under the laws of Georgia.  Neither Ford nor the lawyers in the Anderson Firm are licensed to practice law in Arkansas.  Ford and Anderson also maintain that venue does not lie in Arkansas because the allegedly fraudulent lawsuit was filed in Georgia. Tenet and Van Es also argue that Arkansas is not the correct venue for this case.

## II.  Authority

### A.  Personal Jurisdiction

When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists.[9]  In a diversity action, a federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state, and by the due process clause of the Fourteenth Amendment.[10]  In 1995, the Arkansas General Assembly amended the long-arm statute to give it the limits imposed by the due process clause of the Fourteenth Amendment.  Arkansas's long-arm statute reads: "The courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution."[11]  This statute authorizes jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process.[12]

Due process requires "minimum contacts" between the non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."[13]  Under a due process analysis, a nonresident defendant's contacts with a forum state must be sufficient to cause the defendant to "reasonably anticipate being haled into court there."[14] The Supreme Court has identified two types of personal jurisdiction -- general and specific. When a cause of action arises out of or is related to a defendant's contacts with the

---

[9]*Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir.), *cert. denied*, 506 U.S. 908 (1992).

[10]*Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

[11]Ark. Code Ann. § 16-4-101(B) (1999).

[12]*Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 653 (8th Cir. 1982).

[13]*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[14]*Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

forum state, the exercise of personal jurisdiction is one of specific jurisdiction.[15]  However, if the exercise of jurisdiction arises in a case that does not stem from the defendant's contacts, the exercise of personal jurisdiction is one of general jurisdiction.[16]  General jurisdiction does not depend on the relationship between the cause of action and the contacts.[17]  Where specific personal jurisdiction over a non-resident is asserted, due process is satisfied if the defendant purposely directed its activities at forum residents, and the litigation results from injuries related to those activities.[18]  When general jurisdiction is in question, a defendant may be subject to the state's exercise of personal jurisdiction if contacts with the state are continuous, systematic, and substantial.[19]

To determine general jurisdiction, the Eighth Circuit adopted a five factor test to establish sufficient contacts. These factors are:  (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.[20]  The first three factors are of primary importance.[21]

---

[15]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

[16]*Id.*; *see also Perkins v. Benguet Mining Co.*, 342 U.S. 437 (1952).

[17]*Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995).

[18]*Id.*

[19]*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

[20]*Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996); *see also John Norrell Arms, Inc. v. Higgins*, 332 Ark. 24 (1998).

[21]*Id.*

**B. Venue**

Venue is the place where the lawsuit may be or should be heard.[22]  The federal venue statute was amended in 1990.[23]  Under the old statute, venue was proper in the place where the claim arose. The new statutory language allows venue in any district where "a substantial part" of the activities (out of which the claim arose) took place.[24]  To determine the correct venue, courts are required to focus on the defendant's actions, not the plaintiff's actions.[25]

The Supreme Court explained (before the amendment of § 1391), that the purpose of a statutorily defined venue is to "protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."[26]  The new language still favors the defendant in a venue dispute by requiring that the events supporting a claim be "substantial" so that a defendant is not brought into a district that has no connection to the dispute.[27]  In making a venue determination, the question is not whether one district among two or more potential forums is the best venue, rather, the question is whether the plaintiff's chosen district had a substantial connection to the claim, even though other forums have greater contacts.[28]

---

[22]*Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc.*, 343 F.2d 7 (8th Cir. 1965).

[23]28 U.S.C. § 1391(b)(2).

[24]*Id.*

[25]*Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).

[26]*Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979).

[27]*Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)

[28]*Setco Enter. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558 (8th Cir. 2003).

A two-part analysis is needed to resolve a venue dispute:   First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.   Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed.[29]   When material acts or omissions within the forum bear a close connection to the claims, they are significant.[30]

## III.  Discussion

### A.  Venue

There is no question that this district has personal jurisdiction of Defendants Tenet and Van Es.  They do not argue lack of personal jurisdiction, but assert that this district is not the proper venue.  I disagree.

The allegations of the complaint show that Arkansas has a substantial connection to Jones's claim for malicious prosecution, fraud, and outrage.  Tenet and Van Es assert that the tort occurred in Georgia because the subject lawsuit was filed in Georgia.  However, each cause of action asserted by Jones is based on events that took place in Arkansas.  So, even though Jones was sued in Georgia, the suit was based on an Agreement that was executed and preformed in Arkansas.

 Jones claims that he was sued in Georgia by a non-existent entity -- St. Mary's Regional Medical Center.  This entity was located in Russellville, Arkansas and was organized under the

---

[29]*Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003); *Cottman*, 36 F.3d at 295-96.

[30]*Jenkins Brick Co.*, 321 F.3d at 1372 (explaining that substantiality requirement of § 1391(b)(2) requires consideration only of acts or omissions that "have a close nexus to the wrong").

laws of Arkansas.  According to Jones's allegations -- before the Georgia lawsuit was filed--

Tenet sold the Hospital to a third party.  It was sold in Arkansas and was registered in Arkansas

under a different name.  Jones alleges that Ford and Van Es knew that the Hospital, known as St.

Mary's Regional Medical Center, no longer existed under that name, but, nevertheless,

prosecuted a lawsuit under a false name.

Jones also alleges that suing in the Hospital's former name was done to hide the fact that

Tenet was the actual plaintiff.  Jones further alleges that the Georgia lawsuit was filed for the

purpose of concealing from the federal government an illegal business arrangement.  This

arrangement involved the payment of money by the Hospital to the Clinic, under the guise of the

Agreement that guaranteed Jones's income.  But, instead of paying Jones under the Agreement,

the Hospital allegedly paid the Clinic -- but misled the federal government into believing that the

payments were made to Jones.  The actions of the Clinic and the Hospital are intrinsic to Jones's

claims and both entities are located in Russellville, Arkansas.

At the time these alleged fraudulent payments were made to the Clinic, Tenet was the

owner of the Hospital and was registered under Arkansas Law.  Any alleged illegal conduct of

Tenet and Van Es took place in Arkansas.  All of the witnesses to the events that support Jones's

claims live in Arkansas.  The depositions of these witnesses were to take place in Arkansas, and

these witnesses helped prepare the answers to discovery.

Under the two step analysis -- venue is proper in Arkansas.  The claims are based on

malicious prosecution, fraud, and outrage.  The alleged acts and omissions that support Jones's

allegations substantially took place in Arkansas, not Georgia.  In fact, the only act that took place

in Georgia was filing the lawsuit -- the prosecution of the lawsuit depended on witnesses and evidence located in Arkansas.

**B.  Personal Jurisdiction**

Ford, and his law firm, Anderson, argue that this district does not have personal jurisdiction because Ford is licensed to practice in Georgia, his law firm -- Anderson -- is located in Georgia, and the lawsuit was filed in Georgia.  I agree that Jones did not allege sufficient facts to bring the Anderson law firm to Arkansas, but Ford is subject to the jurisdiction of this district.

Due process requires that bringing Ford within this district's jurisdiction does not offend traditional notions of fair play and justice.  The basic rule of thumb for due process is to avoid bringing an unsuspecting defendant into foreign jurisdictions where he has no contacts and to which he had no reason to believe he would be summoned.  This is not the case with Ford.  Ford voluntarily signed on to represent Tenet, who he knew was registered to do business in Arkansas. He should have anticipated that he might be brought back to this state for matters connected to his representation of Tenet.

This is a case of general jurisdiction, not specific jurisdiction.  In order to assert specific personal jurisdiction over a non-resident -- the non-resident must have wronged an Arkansas resident.  Jones is not an Arkansas resident, so, the Eighth Circuit's five step analysis must be made in order to assert "general" personal jurisdiction with regard to Ford.

The nature of the contact Ford had with this state is a fundamental part of Jones's malicious prosecution claim.  Ford was representing an Arkansas client when he filed the Georgia lawsuit.  The allegations of the complaint were based on events that occurred in Arkansas.  In order to prosecute the case and represent his Arkansas client, Ford relied on information supplied

by Van Es and other representatives of the Hospital and Clinic in Russellville, Arkansas. The allegations and evidence reveal that the amount of contact was significant. Ford contacted Arkansas witnesses to answer discovery. He traveled to Arkansas to conduct depositions, and he admits to numerous contacts with Jones's Arkansas lawyer -- he spoke to Jones's lawyer 15 times and sent 10 pieces of mail.[31]

In addition, there is a strong connection between Ford's contacts and Jones's allegations. Jones alleges that Ford knew that the named plaintiff (St. Mary's Regional Medical Center) was no longer registered in Arkansas, and he acted at the behest of his client, Tenet, for the purpose of concealing alleged fraudulent business dealings that took place in Arkansas.

Based on the nature and amount of contacts, and the relationship between the contacts and this cause of action, Ford meets due process and minimum contact requirements. On the other hand, there are no allegations tying Anderson to Arkansas, outside its partnership with Ford.

## IV. Conclusion

In view of the above, the Motion to Dismiss filed by Defendants Mark Ford and Anderson Dailey, LLP is GRANTED as to Anderson Dailey, LLP, and DENIED as to Mark Ford; the Motion to Dismiss by Defendants Tenet HealthSystem Medical, Inc. and Wendell Van Es is DENIED; the Motion to Dismiss or Strike filed by Tenet HealthSystem Medical, Inc. and Wendell Van Es is DENIED; the Motion to Dismiss the Amended and Substituted Complaint filed by Defendants Mark Ford and Anderson Dailey is GRANTED as to Anderson Dailey, LLP, and DENIED as to Mark Ford; the Motion to file a Second Amended and Substituted Complaint filed by Plaintiff Jones is GRANTED.

---

[31]Doc. No. 5, Def. Ex. A (affidavit of Mark Ford).

IT IS SO ORDERED this 12th day of December, 2006.


                                        /s/Wm. R. Wilson, Jr.
                                        UNITED STATES DISTRICT JUDGE