IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**TERRENCE JONES, M.D., Ph.D.**                                                              **PLAINTIFF**

VS.                                             **4:06CV00542-WRW**

**MARK FORD,** *et al.*                                                                       **DEFENDANTS**

**ORDER**

Pending are Defendants' Motions for Summary Judgment (Doc. Nos. 73, 77). Plaintiff has responded (Doc. No. 84). Also pending is Plaintiff's Motion for Extension of Time to File Response / Reply and to Continue Trial (Doc. No. 127). Defendants have responded (Doc. No. 128). For the reasons set out below, Defendants' Motions for Summary Judgment are GRANTED in part and DENIED in part. Plaintiff's Motion for Extension of Time (Doc. No. 127) is DENIED as MOOT.

**I. Background**

Plaintiff entered into a Relocation Agreement ("Agreement") with St. Mary's Regional Medical Center ("Hospital") and the St. Mary's Medical Group ("Clinic").[1] Plaintiff entered into a separate Employment Contract with the Clinic.[2] Under the Employment Contract, Plaintiff received an income.[3] Under the Agreement, Plaintiff received a supplement to his income from the Hospital for one year, under the condition that he remain in the Russellville area for three

---

[1] Doc. No. 35.

[2] *Id.*

[3] *Id.*

1

years.[4] The Agreement was regulated by federal law, which required Plaintiff to stay in Russellville for two years after he stopped receiving the supplemental income benefits; if Plaintiff did not stay the two additional years, he was required to reimburse the Hospital for supplements he received.[5] The Agreement also made Plaintiff and the Clinic jointly and severally liable for any reimbursement of supplements to the Hospital.[6]

Defendant Tenet owned the Hospital, and Defendant Van Es was the Hospital's Chief Financial Officer.[7] Defendant Ford practices law in Georgia.[8]

Plaintiff began working for the Hospital in 2001, but he left in 2002 -- before the Agreement expired.[9] Defendant Van Es demanded that Plaintiff reimburse the Hospital the sum of $29,500.00.[10] According to Plaintiff's Complaint, the Hospital did not demand any reimbursement from the Clinic.[11] Plaintiff alleges that the Hospital never paid him the supplement, because the money was paid to the Clinic.[12] Plaintiff alleges that in May, 2004,

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Doc. No. 35.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

Defendants caused a suit to be filed against him in Georgia, where he was then a resident, to recover the purported debt.[13] The plaintiff in that suit was St. Mary's Regional Medical Center.

Roughly six months before Defendants allegedly caused the lawsuit to be filed, Defendant Tenet purportedly sold the Hospital in an asset sale to Triad Hospitals, Inc. ("Triad").[14] Plaintiff alleges that, as of late 2003, Defendant Tenet did not have any ownership interest in the Hospital.[15] Tenet allegedly conveyed the Hospital's fictitious name -- St. Mary's Regional Medical Center -- to Triad in the sale.[16] Plaintiff alleges that the entity formerly known as St. Mary's Regional Medical Center ceased to exist, and attached to its Complaint a print-out from the Arkansas Secretary of State webpage showing that the name St. Mary's Regional Medical Center has expired.[17]

Plaintiff alleges that the lawsuit Defendants filed against him was fraudulent, because it was filed by a non-existent entity -- St. Mary's Regional Medical Center (the Hospital) -- for the purpose of concealing the actual Plaintiff -- Tenet. After a year of discovery, and before the deposition of Defendant Van Es, Defendant Ford dismissed the lawsuit.

---

[13]Doc. No. 35.

[14]*Id.*

[15]*Id.*

[16]*Id.*

[17]*Id.*

Plaintiff filed this case, suing Defendants for: malicious prosecution; abuse of process; fraud; outrage; and negligence.[18]  Defendants seek summary judgment on all claims.[19]

**II.  Summary Judgment Standard**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[20]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[21]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[22]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[23]  I must view the facts in the light most favorable to the party opposing the motion.[24]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

---

[18]Doc. No. 35.

[19]Doc. Nos. 74, 78.

[20]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[21]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[22]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[23]*Id.* at 728.

[24]*Id.* at 727-28.

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[25]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

## III. Discussion

### A. Abuse of Process and Outrage

Plaintiff's counsel concedes that the claims of abuse of process and outrage should be dismissed.[26] The Motions for Summary Judgment are GRANTED for each of these claims. This leaves Plaintiff's claims for malicious prosecution and fraud.

### B. Malicious Prosecution and Fraud

#### 1. Choice of Law

When jurisdiction is based on diversity, federal district courts must apply the choice of law rules of the state in which they sit.[27] This Court is in Arkansas; Arkansas's choice-of-law rules apply. Arkansas has adopted a combination choice-of-law test of both the *lex loci delicti*

---

[25]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[26]Doc. No. 84. Jones attached to this response his own arguments for abuse of process, outrage, and negligence. I have reviewed his claims, and determined that they are without merit.

[27]*Baxter Intern, Inc. v. Morris*, 976 F.2d 1189, 1195 (8th Cir. 1992).

rule and five factors put forth by Professor Robert A. Leflar.[28] *Lex loci delicti* means the law of the place where the tort was committed.[29] The Leflar factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.[30]

This Court has already held that most of the actions alleged in Plaintiff's Complaint occurred in Arkansas.[31] Thus, the *lex loci delicti* test favors the application of Arkansas law.

First, to prevent forum shopping, predictability of results suggests that any two decisions, based on identical facts, should be the same, regardless of where they occur.[32] For the claim of fraud, Arkansas and Georgia law have nearly identical elements, and recovery would be similar.[33]

In connection with malicious prosecution, Georgia law is different and a different result might well occur. In Georgia, malicious prosecution cases are governed by statute.[34] It's statute

---

[28]See *Schubert v. Target Stores*, 20 S.W.3d 917 (Ark. 2005); *Ganey v. Kawasaki Motors Corp.*, 234 S.W.3d 838 (Ark. 2006); *Gomez v. ITT Educational Services, Inc.*, 71 S.W.3d 542 (Ark. 2002).

[29]*Ganey*, 234 S.W.3d at 846.

[30]*Schubert*, 201 S.W.3d at 921.

[31]Doc. No. 34.

[32]*Schubert*, 201 S.W.3d at 922.

[33]See *Buercklin v. Landes*, No. CA 07-604, 2008 WL 2122819 (Ark. App. May 21, 2008) (laying out elements of fraud in Arkansas); *Johnson v. CAPVT Motors, Inc.*, 2008 WL 2439982 (Ga. App. June 18, 2008) (setting out elements of fraud in Georgia).

[34]Ga. Code Ann. § 51-7-85.

requires a final termination of the proceedings, and Georgia courts have held that a voluntary dismissal is not a final termination.[35] Georgia law would prevent Plaintiff from bringing an abusive litigation claim. Arkansas also requires a final termination of the proceedings, but has held that a *nolle prosequi* qualifies as a final termination.[36] Thus, Plaintiff would be allowed to bring his malicious prosecution claim under Arkansas law.

Second, when the underlying conduct is a tort, the maintenance of interstate order is of relatively limited importance; citizens of one state will not likely travel to another state to avail themselves of the other state's laws in committing a tort.[37] Maintenance of interstate order is not normally "implicated if the state whose law is to be applied has 'sufficient contacts with and interest in the facts and issues being litigated.'"[38] Since Arkansas has sufficient contacts with the facts and issues being litigated, maintenance of interstate order is not a major factor in the choice-of-law analysis.

Third, for simplification of the judicial task, Arkansas courts suggest that where out-of-state laws are outcome-determinative, importing the out-of-state law should be considered.[39] For fraud, both Arkansas and Georgia apply similar approaches, so the judicial task would be similar under either law. For malicious prosecution, Georgia law would apparently require the dismissal

---

[35] Ga. Code Ann. § 51-7-84(b); *Stocks v. Glover*, 469 S.E.2d 677, 679 (Ga. App. 1996).

[36] *Sundeen v. Kroger*, 133 S.W.3d 393, 396 (Ark. 2003); *Crockett Motor Sales, Inc. v. London*, 671 S.W.2d 187, 189 (Ark. 1984).

[37] *Gomez*, 71 S.W.3d at 547.

[38] *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001) (quoting *Myers v. Gov't Employees Ins. Co.*, 302 Minn. 359 (1974)).

[39] *Gomez*, 71 S.W.3d at 547; Robert A. Leflar, AMERICAN CONFLICTS LAW § 105, at 209 (3d ed. 1977).

of the claim for lack of a final termination of the underlying Georgia suit. Arkansas law would require a fact-based analysis. This factor favors Georgia law.

Fourth, Arkansas's governmental interest is in preventing vexatious lawsuits. The Georgia suit was based on a contract, signed in Arkansas, to bring Plaintiff to Arkansas under the employment of a company Defendant Tenet owned in Arkansas, and the suit was prosecuted by a company claiming to be from Arkansas. With most of the significant underlying action occurring in Arkansas, this factor favors Arkansas law.

Finally, a court should consider which rule of law is better. Arkansas courts have suggested that when, based on a choice of law, a plaintiff could not get his day in court, the law allowing plaintiff his day in court is superior.[40] If Georgia law governed, Plaintiff would lose his malicious prosecution claim, but under Arkansas's law, Plaintiff would get his day in court. This factor also favors Arkansas law.

Because the *lex loci delicti* test and the five Leflar factors lean toward Arkansas law, Arkansas law applies.

### i. The Malicious Prosecution Claim

Plaintiff alleges that Defendants filed the Georgia lawsuit in the name of the Hospital to conceal various nefarious acts and to collect money Jones did not owe.[41] Under Arkansas law, malicious prosecution has five elements: (1) a proceeding instituted or continued by the

---

[40]See *Schubert*, 201 S.W.3d at 923 (holding that Arkansas law is the better rule of law because Arkansas law would permit the claim, and Louisiana law would prevent Schubert from his day in court); and *Wallis v. Mrs. Smith's Pie Co.*, 550 S.W.2d 453, 459 (Ark. 1977) (holding Arkansas comparative law is the better rule of law because it would allow the plaintiff to collect damages, where the Missouri contributory negligence law would prevent the plaintiff from collecting damages.).

[41]   Doc. No. 35.

defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages.[42]  A cause of action lies for malicious prosecution when the underlying case was a civil proceeding.[43]

Defendants focus on the requirement of the termination of the proceeding in favor of the plaintiff.  The Georgia lawsuit was voluntarily dismissed, and no judgment on the merits was entered.[44]  Defendant Tenet cites *Farm Service Co-op., Inc. v. Goshen Farms, Inc.*[45] to support its assertion that the Georgia lawsuit was not sufficiently terminated.[46]  However, in *Farm Service Co-op.*, the plaintiff filed an action, dismissed it, then re-filed it, where the defendant filed a counter-claim for malicious prosecution based on the favorable termination of the first suit.[47]  The Arkansas Supreme Court held that the previous suit had not been terminated, but merely suspended and then continued.[48]  The Arkansas Supreme Court has held an entry of *nolle prosequi* to be a sufficient termination for proceeding with a malicious prosecution claim.[49]

---

[42]*South Arkansas Petroleum Co. v. Schiesser*, 36 S.W.3d 317, 319 (2001).

[43]*Carmical v. McAfee*, 7 S.W.3d 350, 356 (Ark. App. 1999).

[44]Doc. Nos. 75, 79, 85.

[45]*Farm Service Co-op., Inc. v. Goshen Farms, Inc.*, 590 S.W.2d 861 (Ark. 1979).

[46]Doc. No. 74.

[47]*Farm Service Co-op.*, 590 S.W.2d at 863.

[48]*Id.* at 867.

[49]*Sundeen v. Kroger*, 133 S.W.3d 393, 396 (Ark. 2003); *Crockett Motor Sales, Inc. v. London*, 671 S.W.2d 187, 189 (Ark. 1984).  Additionally, the Restatement (Second) of Torts suggests that nonsuit and *nolle prosequi* be treated similarly for malicious prosecution purposes: "Civil proceedings may be terminated in favor of the person against whom they are brought under the rule stated in Clause (b), by (1) the favorable adjudication of the claim by a competent

The Georgia suit was dismissed before this case was filed, and there is no present action in Georgia. Accordingly, the Motions for Summary Judgment are DENIED as to Plaintiff's malicious prosecution claim.

### ii. The Fraud Claim

Plaintiff alleges that Defendants committed fraud when they filed and pursued the Georgia lawsuit.[50]

> [T]o prove fraud, a plaintiff must prove five elements under Arkansas law: (1) that the defendant made a false representation of the material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the planitiff in reliance up on the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation.[51]

"When a plaintiff discovers the misrepresentation and protects his interests rather than acting in reliance on it, the misrepresentation is not actionable."[52]

Plaintiff asserts that being sued by a nonexistent party is fraud.[53] Defendants maintain that Plaintiff, after discovering the misrepresentation, protected his interests, rather than relying on the misrepresentation, and that the misrepresentations, if any, were not material.[54]

---

tribunal, or (2) *the withdrawal of the proceedings by the person bringing them*, or (3) *the dismissal of the proceedings because of his failure to prosecute them.*" (Emphasis added) RESTATEMENT (SECOND) OF TORTS, § 674, cmt. j (1977).

[50]Doc. No. 35.

[51]*Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 377 (2007).

[52]*Moss v. Am. Alternative Ins. Corp.*, 420 F. Supp. 2d 962, 965 (8th Cir. 2006) (citing *Woodrow v. Riverside Greyhound Club*, 192 Ark. 770, 774 (1936)).

[53]Doc. No. 35.

[54]Doc. Nos. 73, 77.

There are genuine issues of material facts in dispute in connection with Plaintiff's fraud claim. Plaintiff alleges that one week before a scheduled deposition, Defendant's counsel called Mr. James[55] and informed him that the Georgia plaintiff did not exist.[56] Plaintiff also alleges that Defendant Ford is willing to admit that Defendant Ford confirmed four weeks before the deposition that the Georgia plaintiff did not exist.[57] The alleged misrepresentation of the identity of the Georgia plaintiff would support a material misrepresentation claim -- because Plaintiff allegedly was led to believe he was being sued by a party with whom he had contracted. Accordingly, Defendants' Motions for Summary Judgment in connection with Plaintiff's fraud claim are DENIED.

### iii. Negligence.

Plaintiff concedes that his Second Amended Complaint contains a claim for negligence, but does not allege negligence -- Plaintiff's Complaint alleges an intentional act.[58]  Plaintiff asserts that at least one Defendant, Ford, contended that his acts were not intentional, and, thus, Plaintiff asks for leave to amend his Complaint to properly plead negligence. Plaintiff's request would not prejudice Defendants, because they were on notice of a negligence claim.  Plaintiff did not adequately state a negligence claim, but did have a section in each of his Complaints clearly labeled "negligence." Plaintiff's request to amend his complaint to properly plead negligence is

---

[55]Plaintiff's former counsel.

[56]Doc. No. 85.

[57]*Id*.

[58]Doc. No. 84.

GRANTED. Plaintiff is directed to file an Amended Complaint by 5:00 p.m., Thursday, August 7, 2008.

**VIII.  Conclusion**

The Motions for Summary Judgment (Doc. Nos. 73, 77) are GRANTED in part and DENIED in part.  The Motions are GRANTED in connection with the abuse of process and outrage claims.  Defendants' Motions are DENIED in connection with Plaintiff's fraud claim, malicious prosecution, and negligence claims.

Plaintiff's Motion for Extension of Time to File Response / Reply and to Continue Trial (Doc. No. 127) is DENIED as MOOT. Supplemental responses in connection with Defendants' Motions for Summary Judgment would not change the above.

IT IS SO ORDERED this 31st day of July, 2008.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE